**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| Steven D'Angelo, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PURFOODS, LLC d/b/a MOM'S MEALS, <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT JURY TRIAL DEMANDED** |

Mom's Meals failed to deliver basic protection of highly sensitive information of Plaintiff Steven D'Angelo, and over 1,200,000 similarly situated persons, resulting in a devastating data breach. Based upon Plaintiff's personal knowledge, investigation and the letter he received from Defendant PurFoods, LLC d/b/a Mom's Meals ("PurFoods" or "Defendant") in addition to investigation by his counsel and review of public documents, asserts the following:

## INTRODUCTION

1.     Plaintiff brings this class action against the following against Defendant for its failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). The PII and PHI included, medical treatment information, health insurance information, diagnosis codes, billing information, date of birth, meal category

and cost, and victims' names, and may include Social Security numbers, home address, driver's license numbers, medical histories and prescription information.[1]

2.    Purfoods, LLC failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiffs seek, among other things, orders requiring Defendant to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.    Defendant states, in a letter to its affected consumers that, "[u]pon identifying suspicious account behavior on February 22, 2023, we launched an investigation with the help of third-party specialists." The letter goes on to state that the company, "experienced a cyberattack between January 16, 2023, and February 22, 2023, that included the encryption of certain files in our network."[2]

4.    However, Defendant did not disclose that its data was affected until August 24, 2023, when they sent out letters to its affected consumers disclosing that their PII and PHI had been exposed in the breach.

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 CFR § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII and PHI also is generally defined to include certain identifiers that do not on their face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security number, passport number, driver's license number, financial account number).

[2] The "Notice Letter". A sample copy is available at https://apps.web.maine.gov/online/aeviewer/ME/40/c7ad1c53-6e20-41d8-8fb6-f1ccd0e3e0cc.shtml (last visited Sep. 1, 2023).

5.       PurFoods, LLC could have prevented the recent Data Breach had it implemented adequate vendor screening and maintained adequate data security measures and protocols in order to secure and protect Plaintiff's and Class Members' data.

6.       As a vendor providing electronic health record and cloud-based storage services to customers that collect and store PHI, Defendant knowingly obtains sensitive patient PII and PHI and has a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII and PHI to PurFoods, LLC customers if they had known that Defendant would not ensure that it used adequate security measures.

7.       Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were stolen in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to PurFood, LLC's data security policies and practices.

## PARTIES

8.       Plaintiff, Steven D'Angelo, is, and at all times mentioned herein was, a Pennsylvania resident.

9.       Defendant PurFoods, LLC d/b/a Mom's Meals is an Iowa limited liability] company with its principal place of business located at 3210 SE Corporate Woods Drive, Ankeny, Iowa 50021.

## JURISDICTION AND VENUE

10.       This Court subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than PurFoods, LLC, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

11.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in Iowa and conducts substantial business in this District through its principal place of business; engaged in the conduct at issue herein from and within this District; and otherwise has substantial contacts with this District.

12.    Venue is proper in this Court and Division pursuant to 28 U.S.C. § 1391(b)(1) and (2) because PurFoods, LLC resides in this District, and this District is where a substantial part of the acts, omissions, and events giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

13.    Defendant is a "healthcare provider" that provides "[f]ully prepared, nutritionally tailored, refrigerated meals delivered directly to homes nationwide[.]"[3] Defendant provides nutritionally optimized meals "to support common health conditions [and partners with] health plans, Medicare and Medicaid plans, Area Agencies on Aging, and case managers.[3]

14.    Plaintiff and Class Members are current and former customers at Defendant.

15.    In order to obtain food delivery services at Defendant, Plaintiff and Class Members

---

[3] https://www.purfoods.com/our-story/ (last visited Sep. 1, 2023).

were required to provide sensitive and confidential Private Information, including their names, health insurance information, and other sensitive information.

16.    Defendant collected and stored some of Plaintiff's and Class Members' most sensitive and confidential information, including, but not limited to, name, address, phone number, date of birth, health insurance information, and/or clinical information, such as diagnosis, treatment information, and/or medication information.

17.    Plaintiff and Class Members relied on this sophisticated Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.  Plaintiff and Class Members demand security to safeguard their PII and PHI.

18.    Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII and PHI from involuntary disclosure to third parties.

19.    Indeed, Defendant's Privacy Policy provides that:

> The security of your Personal Information is important to us. When you enter sensitive information (such as credit card number) on our registration or order forms, we encrypt that information using secure socket layer technology (SSL). To learn more about SSL, follow this link www.verisign.com.
>
> We follow generally accepted industry standards to protect the Personal Information submitted to us, both during transmission and once we receive it.[4]

20.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

---

[4] https://www.purfoods.com/privacy-policy/ (last visited Sep. 1, 2023).

*The Data Breach*

21.     On or about August 24, 2023, Defendant began sending Plaintiff and other Data

Breach victims a Notice of Data Event letter (the "Notice Letter"), informing them that:

> **What Happened?** Upon identifying suspicious account behavior on February 22, 2023,
> we launched an investigation with the help of third-party specialists. The investigation
> determined that we experienced a cyberattack between January 16, 2023, and February 22,
> 2023, that included the encryption of certain files in our network. Because the investigation
> also identified the presence of tools that could be used for data exfiltration (the
> unauthorized transfer of data), we are not able to rule out the possibility that data was taken
> from one of our file servers.

> **What Information Was Involved?** Third-party specialists have helped us conduct a
> review of the potentially involved data, which concluded on July 10, 2023, and determined
> that the files at issue included name, health insurance information, and meal category
> and/or cost.[5]

22.     The notice letter did not state the dates of Defendant's investigation, or the reason

it took so long to notify consumers of the breach.

23.     Defendant admitted in the sample breach notices that an unauthorized party

compromised sensitive information about Plaintiff and Class Members, including name, address,

phone number, date of birth, health insurance information, and/or clinical information, such as

diagnosis, treatment information, and/or medication information.

24.     In response to the Data Breach, Defendant claims that it "took immediate steps to

contain the attack and prevent further damage."[6]  However, the details of the root cause of the Data

Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does

not occur again have not been shared with regulators or Plaintiff and Class Members, who retain a

vested interest in ensuring that their information remains protected.

---

[5] Notice Letter.

25.     Plaintiff's and Class Members' unencrypted information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiff and Class Members.  Unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

26.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing their PII and PHI to be exposed.

27.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection." [6]

28.     To prevent and detect ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no

---

[6] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited June 15, 2021).

users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[7]

29.     To prevent and detect ransomware attacks, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different

---

[7] *Id.* at 3-4.

domain (e.g., .com instead of .net)…

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[8]

30.    To prevent and detect ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-    Apply latest security updates
-    Use threat and vulnerability management
-    Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-    Prioritize and treat commodity malware infections as potential full compromise;

---

[8] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited June 15, 2021).

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[9]

31.    Given that Defendant was storing the PII and PHI of more than 56,000 individuals, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

32.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures, resulting in the Data Breach and the exposure of the PII and PHI of more than 56,000 individuals, including Plaintiff and Class Members.

***Defendant Acquires, Collects and Stores Plaintiff's and Class Members' PII and PHI.***

---

[9] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited June 15, 2021).

33.    Defendant acquired, collected, and stored Plaintiff's and Class Members' PII and PHI.

34.    As a condition of its relationships with Plaintiff and Class Members, Defendant required that Plaintiff and Class Members entrust Defendant with highly confidential PII and PHI.

35.    By obtaining, collecting, and storing the PII and PHI of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII and PHI from disclosure.

36.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### Securing PII and PHI and Preventing Breaches

37.    Defendant could have prevented this Data Breach by properly securing and encrypting the PII and PHI of Plaintiff and Class Members.  Alternatively, Defendant could have destroyed the data, especially decade-old data from former residents.

38.    Defendant's negligence in safeguarding the PII and PHI of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

39.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

### Value of Personal Identifiable Information

40.    The PII and PHI of individuals remains of high value to criminals, as evidenced by

the prices they will pay through the dark web.

41.    The PII and PHI of Plaintiff and Class Members was taken by hackers to sell it to other criminals who will purchase the PII and PHI for that purpose.

42.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members and of the foreseeable consequences that would occur if the PII and PHI were compromised, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members a result.

43.    Plaintiff and Class Members now face years of constant surveillance of their personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damages.

44.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data stored on and/or shared on its system, amounting to more than 56,000 individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

45.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiff and Class Members.

### *Plaintiff Steven D'Angelo's Experience*

46.    Plaintiff is, and has been since prior to the breach, a patient of one of Defendant's customers.

47.    On or around September 6, 2023, Plaintiff received a Notice of Data Breach from Defendant.

48.     As a result of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach. This time has been lost forever and cannot be recaptured.

49.     Additionally, Plaintiff is very careful about sharing his PII and PHI. He has never knowingly transmitted unencrypted PII and PHI over the internet or any other unsecured source.

50.     Plaintiff stores any documents containing his PII and PHI in a safe and secure location. Moreover, he diligently chooses unique usernames and passwords for his few online accounts.

51.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII and PHI—a form of intangible property that Plaintiff entrusted to Defendant for the purpose of obtaining services from Defendant's customers, which was compromised in and as a result of the Data Breach.

52.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

53.     Plaintiff has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remain backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

55.     Specifically, Plaintiff proposes the following Nationwide Class, subject to amendment as appropriate:

**Nationwide Class**

56.     All individuals in the United States whose Private Information was impacted as a result of the Data Breach (the "Class").

57.     Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

58.     Plaintiff reserves the right to modify or amend the definition of the proposed Nationwide Class, as well as add subclasses, before the Court determines whether certification is appropriate.

59.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

60.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Although the precise number is currently unknown and exclusively in Defendant's possession, according to the report submitted to the Office of the Maine Attorney General, approximately 1,200,000 persons were impacted in the Data Breach.[10] Thus, numerosity is satisfied.

61.     <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a.      Whether PurFoods engaged in the conduct alleged herein;

---

[10] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/c7ad1c53-6e20-41d8-8fb6-f1ccd0e3e0cc.shtml (last visited Sep. 1, 2023).

b.    Whether PurFoods's conduct violated the FTCA and/or HIPAA;

c.    When PurFoods learned of the Data Breach;

d.    Whether PurFoods's response to the Data Breach was adequate;

e.    Whether PurFoods unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

f.    Whether PurFoods failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g.    Whether PurFoods's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.    Whether PurFoods properly audited, monitored, or verified the integrity of its vendor's data security systems prior to and during the Data Breach;

i.    Whether PurFoods's data security systems prior to and during the Data Breach were consistent with industry standards;

j.    Whether PurFoods owed a duty to Class Members to safeguard their Private Information;

k.    Whether PurFoods breached its duty to Class Members to safeguard their Private Information;

l.    Whether hackers obtained Class Members' Private Information via the Data Breach;

m.    Whether PurFoods had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

n.    Whether PurFoods breached its duty to provide timely and accurate notice of the

Data Breach to Plaintiff and Class Members;

o.    Whether PurFoods knew or should have known that its data security systems and monitoring processes were deficient;

p.    What damages Plaintiff and Class Members suffered as a result of PurFoods's misconduct;

q.    Whether PurFoods's conduct was negligent;

r.    Whether PurFoods was unjustly enriched;

s.    Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

t.    Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

u.    Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

62.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, inter alia, all Class Members were injured through the common misconduct of PurFoods. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

63.    <u>Adequacy of Representation.</u> Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in

16

litigating class actions, including data privacy litigation of this kind.

64.    <u>Predominance</u>. PurFoods has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from PurFoods's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

65.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for PurFoods. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

66.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). PurFoods has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

67.    Finally, all members of the proposed Class are readily ascertainable. PurFoods has access to the names and addresses and/or email addresses of Class Members affected by the Data

Breach. Class Members have already been preliminarily identified and sent Notice of the Data Breach by PurFoods.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and The Class)**

68.    Plaintiff restates and realleges Paragraphs 1 through 67, as if fully set forth herein.

69.    Defendant requires its customers, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing its food delivery services.

70.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its services to its customers, which solicitations and services affect commerce.

71.    Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

72.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

73.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

74.    Defendant had a duty to employ reasonable security measures under Section 5 of

the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

75.     Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

76.     For instance, HIPAA required Defendant to notify victims of the Breach within 60 days of the discovery of the Data Breach. Defendant did not begin to notify Plaintiff or Class Members of the Data Breach until August 24, 2023, despite Defendant knowing on February 22, 2023, that unauthorized persons had accessed and acquired the private, protected, personal information of Plaintiff and the Class.

77.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

78.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between PurFoods and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted PurFoods with their confidential Private Information, a necessary part of being customers of Defendant.

79.     Defendant's duty to use reasonable care in protecting confidential data arose not

only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

80.     Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

81.     Defendant also had a duty to exercise appropriate clearinghouse.practices to remove former customers' Private Information it was no longer required to retain pursuant to regulations.

82.     Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

83.     Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

84.     Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

     a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

     b.   Failing to adequately monitor the security of their networks and systems;

     c.   Allowing unauthorized access to Class Members' Private Information;

    d.   Failing to detect in a timely manner that Class Members' Private Information had been compromised;

    e.   Failing to remove former customers' Private Information it was no longer required to retain pursuant to regulations,

    f.   Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

    g.   Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

85.    Defendant violated Section 5 of the FTC Act and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

86.    Plaintiff Commission Act and HIPAA were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

87.    Defendant's violation of Section 5 of the FTC Act and HIPAA constitutes negligence.

88.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

89.    A breach of security, unauthorized access, and resulting injury to Plaintiff and

the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

90.     It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the food delivery industry.

91.     Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

92.     Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

93.     It wherefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

94.     Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

95.     Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

96.     Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to

guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

97.     Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

98.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

99.     There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

100.    Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) diminution of value of their Private Information; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

101.    As a direct and proximate result of Defendant's negligence, Plaintiff and the

Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

102.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

103.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

104.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and The Class)**

105.    Plaintiff restates and realleges Paragraphs 1 through 67, as if fully set forth herein.

106.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice

by Defendant of failing to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

107.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

108.    For instance, HIPAA required Defendant to notify victims of the Breach within 60 days of the discovery of the Data Breach. Defendant did not begin to notify Plaintiff or Class Members of the Data Breach until August 24, 2023, despite Defendant knowing on February 22, 2023, that unauthorized persons had accessed and acquired the private, protected, personal information of Plaintiff and the Class.

109.    Private Information, pursuant to Section 5 of the FTC Act, HIPAA, has an independent duty of care.

110.    Defendant violated Section 5 of the FTC Act, HIPAA, and similar state statutes by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

111.    In its Privacy Policy, PurFoods promises its customers that it will not disclose customers' Private Information, outside of the excepted circumstances set forth therein—none of which apply here. However, Plaintiff's and Class Members' Private Information has been

disclosed without their written authorization as a result of the Data Breach.

112.    Through its Privacy Policy, and in light of the highly sensitive and personal nature of the information PurFoods acquires and stores with respect to its customers, PurFoods promises to, among other things: keep customers' Private Information private; comply with federal law related to data security and the maintenance of its customers' Private Information; and utilize computer safeguards and secured files and buildings.

113.    As evidenced by the occurrence of the Data Breach, Defendant negligently misrepresented its data security measures and Privacy Policy to Plaintiff and Class Members.

114.    Defendant violated Section 5 of the FTC Act and HIPAA by negligently misrepresenting its data security practices to Plaintiff and Class Members.

115.    Defendant violated Section 5 of the FTC Act and HIPAA by breaching its duties of care to Plaintiff and Class Members, as provided in its Privacy Policy.

116.    Defendant further violated Section 5 of the FTC Act and HIPAA by failing to ensure that its vendors use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and shared and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

117.    Defendant's violation of Section 5 of the FTC Act, HIPAA, and other duties (listed above) constitutes negligence *per se.*

118.    Class Members are consumers within the class of persons Section 5 of the FTC Act, HIPAA, and similar state statutes were intended to protect.

119.    Moreover, the harm that has occurred is the type of harm the FTC Act, HIPAA, and

similar state statutes were intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against insurance companies which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

120.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

121.    There is a close causal connection between Defendant's failure to implement or ensure security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

122.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) diminution of value of their Private Information; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

123.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

124.    As a direct and proximate result of Defendant's negligence *per se*, the products and/or services that Defendant provided to Plaintiff and Class Members damaged other property, including the value of their Private Information.

125.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

126.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner.

127.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT III
### Breach of Implied Contract
### (On Behalf of Plaintiff and The Class)

128.    Plaintiff restates and realleges Paragraphs 1 through 67, as if fully set forth

herein.

129.    Plaintiff and Class Members were required to provide their Private Information to Defendant as a condition of receiving food delivery services from Defendant.

130.    Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

131.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

132.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

133.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

134.    Defendant solicited, offered, and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class

Members accepted Defendant's offers and provided their Private Information to Defendant.

135.    In accepting the Private Information of Plaintiff and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the Private Information from unauthorized access or disclosure.

136.    On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

137.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

138.    Plaintiff and Class Members paid money and provided their Private Information to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

139.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

140.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

141.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

142.    Defendant breached the implied contracts it made with Plaintiff and the Class by

failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

143.    As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

144.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

145.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**Invasion of Privacy**
**(On Behalf of Plaintiff and The Class)**

146.    Plaintiff restates and realleges Paragraphs 1 through 67, as if fully set forth herein.

147.    Plaintiff and Class Members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

148.    Defendant invaded Plaintiff's and the Class Members' right to privacy by allowing the unauthorized access to Plaintiff's and Class Members' Private Information and by negligently maintaining the confidentiality of Plaintiff's and Class Members' Private Information, as set forth above.

149.    The intrusion was offensive and objectionable to Plaintiff, the Class Members,

and to a reasonable person of ordinary sensibilities in that Plaintiff's and Class Members' Private Information was disclosed without prior written authorization of Plaintiff and the Class.

150.    The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff and the Class Members provided and disclosed their Private Information to Defendant privately with an intention that the Private Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

151.    As a direct and proximate result of Defendant's above acts, Plaintiff's and the Class Members' Private Information was viewed, distributed, and used by persons without prior written authorization and Plaintiff and the Class Members suffered damages as described herein.

152.    Defendant has committed oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class Members' Private Information with a willful and conscious disregard of Plaintiff's and the Class Members' right to privacy.

153.    Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class, and Defendant may freely treat Plaintiff's and Class Members' Private Information with sub-standard and insufficient protections.

154.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiff and the Class Members great and irreparable injury in that the Private Information maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons.

## COUNT V
### Unjust Enrichment
### (On Behalf of Plaintiff and The Class)

155.    Plaintiff restates and realleges Paragraphs 1 through 67, as if fully set forth herein.

156.    This count is pleaded in the alternative to the Breach of Implied Contract claim above (Count III).

157.    Plaintiff and Class Members conferred a monetary benefit of Defendant. Specifically, they paid for services from Defendant and/or its agents and in so doing also provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their Private Information protected with adequate data security.

158.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

159.    Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

160.    Defendant acquired the Private Information through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

161.    If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would have entrusted their Private Information at Defendant or obtained

services at Defendant.

162.     Plaintiff and Class Members have no adequate remedy at law.

163.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

164.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) diminution of value of their Private Information; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

165.     Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

166.     Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Nationwide Class and appointing Plaintiff and their Counsel to represent each such Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII

and PHI of Plaintiff and Class Members;

v.    prohibiting Defendant from maintaining the PII and PHI of Plaintiff and Class Members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.    requiring Defendant to conduct regular database scanning and securing checks;

xi.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.    requiring Defendant to routinely and continually conduct internal training and

education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.  requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.  requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.  requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the

Court's final judgment;

D.    For an award of damages, including actual, consequential, nominal, and statutory

damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Dated: September 13, 2023

Respectfully Submitted,

**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

/s/ J. Barton Goplerud
J. Barton Goplerud
Brian O. Marty
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

William "Billy" Peerce Howard, Esq. *
Florida Bar No. 0103330
Amanda J. Allen, Esq.
Florida Bar No. 0098228
THE CONSUMER PROTECTION FIRM
401 East Jackson Street, Suite 2340
TRUIST PLACE
Tampa, FL 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com

*pro hac vice application forthcoming*